The opinion of the Court was delivered by
Bat, J.
This special verdict appears to me to bring two important points before the Court:
1. Whether this assignment by the surviving copartner was valid or not ? And if so,
2. Whether the defendant had a right to set off the amount of these dividends against the survivor, upon his endorsement on the bill of exchange, returned protested, or not ?
Under this first head, I take the law to be very well settled at this day, (as was properly observed by the ’’'plaintiff’s counsel in the argument,) that the copartnership effects ought to go to the payment of the copartnership debts in the first place, and if there be a surplus, then to the payment of the private debts of each copartner afterwards, in proportion to his share in the joint funds.[1] And this principle holds equally good whether the partnership subsists, or dissolved *338 by mutual consent, or by the death of one of the copartners. They are all bound to take care and see that the copartnership debts are first paid off and discharged. Another well established principle in the law of partnership is, that upon the death of one of the copartners, the partnership is dissolved, (as laid down in Watson, 358,) and the joint effects are cast upon the survivor afterwards, for the purpose of paying off the joints debts, and then for an equitable distribution afterwards, if any surplus remain. And for this purpose, the survivor has a right to sell and dispose of all the remaining stock of the copartnership, and such sale is unquestionably good and valid in law.
Let us now test the circumstances of this case by the above principles of law, in order to see whether this transfer to the plaintiff was a legal one or not ? It is stated by the special verdict, and indeed it was admitted, that, on the 25th June, 1801, the copartnership of John P. White & Co., held twenty shares in the Union Insurance Company, and that, afterwards, on the 29th June, 1801, Eli Ives, one of the copartners, while they held said stock, died; that, at the time of this dissolution of the partnership, the firm of the house of John P. White & Co., were insolvent and 'behind hand to the amount of about twenty-five hundred dollars ; and in .order to satisfy the creditors of the concern, on the 10th August, 1810, 'the said John P. White, as the surviving copartner, assigned over all .the effects, both real and personal, and all the debts due to said partner-ship to the plaintiff in this action, towards payment and satisfaction of cre®ors, ln proportion to their demand. In the meantime,* however, between the death of the said Eli Ives, and the assignment of the surviving copartner to the plaintiff, the dividends stated in the special verdict became due, to the amount of seven hundred and forty-four dollars, on the shares held by the said copartnership in the said Insurance Company. And the principal question under this first head is, whether this assignment was or was not a legal transfer of those dividends, so as to authorize the plaintiff, Joseph Frederick White, to demand and have of the Insurance Company the amount of them or not ? And I am clearly of opinion, it was a fair and legal transfer, and that the surviving copartner did exactly what the law, in such cases, enjoined upon him to do, to provide for the payment of the copartnership debts in the first place, out of the copartnership funds. For it is expressly laid down in the case of Harrison v. Sierry, than an assignment by one partner, in the name of the copartnership, of the joint effects and credits, is valid. 5 Cranch, 289. Now, if this is good and valid by one partner, during the life time of the other, it is, a fortiori, good and valid when done by a survivor, and more particularlv in cases of insolvency. Wat. 448.
This brings me to the second point I proposed to consider. Whether the Insurance Company had a right to set off these dividends against John P. White, upon his endorsement of a bill of exchange ? And here I lay it down as settled law,[1] that after the dissolution of a copartnership the surviving copartner has no right to enter into, or make any contract, which shall be binding on the former copartneship, or which may affect *339 funds or effects of the copartnership, or those entitled to a share of the funds, after the debts are paid. The cases in the books are clear and decided on this point. One partner, after the dissolution of a partnership, cannot even endorse bills or notes given before to the firm, though he is authorized to settle the concerns of the firm. 4 John. Rep. 224. If one partner, after the dissolution of *the parternership, issues notes in the name of the copartnership, the other partner is not liable. The power of one partner to bind the partnership ceases with it. 2 John. Rep. 300. If one partner, who is authorized to adjust the debts, acknowledges a bill due from the-copartnership, it will not bind his copartner ; for the Court said, it was clear, that, after dissolution, the power of one party to bind the other ceases, and there is no reason why his acknowledgment should bind the other copartners, any more than giving his note in the name of the firm, or any other act. 3 John. Rep. 538. Cases, without number, might be cited to prove the same point. I shall, therefore, content myself with citing one more, and that, in our own Court.[1] The case of David Lamb, survivor of Patrick Mair & Co., v. Saltus & Yates, argued in January term, 1809, in which is was determined, that every bill or note, drawn or endorsed by a copartner, after the dissolution of the copartnership, was to be considered as the private debt of the individual copartner making it, and by no means the debt of the company, nor were any of the partnership funds liable for the same.
I come now to the discount. It appears that the discount offered in this case was a bill of exchange, endorsed by John P. White, after the dissolution of the copartnership, not even on accouut of the concern, but for the accommodation of Bailey & Waller, no way connected with them, but strangers to the firm of J. P. White & Co., after the death of Mr. Ives, the other copartner, which was returned in March, 1808. It does not appear, when, or whether J. P. White ever had notice of this protest; for, until he had due notice, he was not even liable on his own endorsement. But, admitting he had this due notice, it can only amount to his own private endorsement on account of Bailey & Waller, which leaves all the copartnership funds free and unincumbered for the benefit of the copartnership creditors, agreeably to the assignment for that purpose. The cases quoted by the defendant’s* counsel, from Montague, 24, in which it is said, that “ a debt due to a company after the death of all the copartners, but one, becomes due to him, and may be set off.’1 I take that to be a case where the copartnership is solvent, and able to pay all its debts, otherwise it would be in the power of one or two of the creditors to run away with the whole of the copartnership effects, tp the prejudice of all the other creditors. At any rate, it is very distinguishable from the present case ; for this is a demand set up, not against the partnership, but against an individual, after the partnership was dissolved, and therefore can have no bearing against the copartnership, or its effects. The other cases quoted by defendant were to the same effect.
Upon the whole of this case, therefore, I am clearly of opinion, that this endorsement of the individual copartner cannot be set off against the dividends which belonged to the copartnership, and which had been as *340 signed over for the payment of its debts, and that the postea should be delivered to the plaintiff to enter up judgment thereon.
King & Heath, for the motion. Drayton & Prioleau, contra.
All the Judges concurred.

 See - v. Baum & Son, 11 Rich.; 8 Rich. 9, 13.

 4 Strob. 220-5.

 MS. 2 Rice Dig. 147, § 23.